May it please the Court, Matthew Freitas, along with my colleague, Derek Adams, on behalf of Appellants Khalifa and Afwerk. I'd like to reserve three minutes of time, if I may. All right. There are three fundamental issues that I think, all of which call for reversal in this case, which I'd like to highlight. Number one, the district courts in both of the wrong standard of review. It's well-established that officer removal statutes are to be given a presumption in favor of removal, not against. So by giving the wrong presumption, that produced the wrong outcome. Number two, the immunity that's at stake here, which is an immunity from suit, not merely immunity from liability, is the same immunity that public health service officials receive, federal public health service officials receive. Doctors Afwerk and Khalifa are deemed by the Secretary of HHS, Department of Health and Human Services, to be that type of officer for purposes of that absolute immunity. Number three, given that, that the immunity is the same, and that immunity is an immunity from suit, it demands, it requires, the same review or comparable judicial review that's available to federal employees who have a dispute with the United States government as to whether or not they were acting within the scope of their employment. And that's precisely what Section 233 L2, under the, under Title 42 of the Public Health Service Act. Can you, before you get to the substance of 233, can you address this Court's jurisdiction to even review a remand order for removal under that statute? Yes, Your Honor. We view the Court as having jurisdiction as to the entire remand order on two grounds, and then jurisdiction to review the order to the extent that it denies immunity on a separate ground. So there's really three paths in our view to appellate jurisdiction. The first that gives review over the remand order is the express exception under 1447 for removals pursuant to 1442, which is the general office removal statute. So that's an under the Removal Clarification Act. That exception allows for this Court to review the entire order, not parts of it, not issues within it, but the entire order. So that includes really two primary issues, the 1442 removability and then the way in which Section 233 L2 works. That's our first basis, Your Honor. The second, which we believe is independent and equally forceful for this Court's jurisdiction, is that Section 233 L2 commanded a hearing in the district court. And under ThermTron, the Supreme Court has recognized that if the removal is not pursuant to a jurisdictional basis or a procedural defect under 1447 C, then a remand order is akin to, and this Court decided flam v. flam, and in that case a magistrate judge ordered a remand. And the body, the law at the time and law today is magistrate judges do not have the authority to issue a remand order. So when a magistrate judge did, that was in excess of the magistrate's jurisdictional basis, that was contrary to the express intent of Congress, which did not give magistrates that authority. Likewise, in this case, 233 L2 has commanding language within it. There is only really one issue in dispute, and that's the way this 15-day clause piece works. When you step past that, we could talk about that hopefully soon, when you step past that 15-day provision. That language otherwise is unequivocal, unambiguous, and commands the district court to conduct a hearing and commands, using the words shall and shall, commands a stay of all proceedings until this threshold determination is made. And conduct, for a court to conduct a hearing and make a determination and issue an order, that is a robust single sentence that basically commanded the district court to do something that it did not do. So when it removed, I'm sorry, when it remanded the case or purported to remand the case to state court, it did so in direct contravention with that command. We believe that falls outside of the two bases which preclude appellate review. The third argument, and I think I would view them in this sequence, the third argument we have as to appellate jurisdiction is under the collateral order doctrine and the Supreme Court's Cohen decision. And that simply allows for immediate interlocutory appeal where the order is treated as final because immunity is important. That's well established. It's separate from the merits of the case. That's well established. And it's also unreviewable later. And we believe there are two aspects to that order that are important and separate from the merits. One is the statute commanded a hearing in federal court. So that commanded a federal forum for this dispute. That's very much like, if not is, an officer removal statute providing a federal forum for the dispute we have in this case. Help me with something on the procedural. I think it's your procedural point. When I read 233L1, my reading was similar to yours. It says that the attorney general shall make an appearance in such court and advise such court as to whether the secretary has made the deeming determination as to the entity. And I thought, well, he's supposed to do two things, not one, appear and say whether the entity has been deemed. And he only did one of those things. He just appeared. So procedurally, the thing was wrong. That's your argument, I think. Yes, Your Honor. However, the 11th Circuit didn't buy it. And I wonder, how do you address the courts that have not bought that, that he has to tell whether the entity has been deemed? I hope that it's not courts, plural, Your Honor. I'm only aware of that 11th Circuit decision. I believe that decision really has not withstood scrutiny and the test of time. It came out early and it got the right result, but for the wrong reason. And I think the El Rio decision really needs to be looked at to shed light on what is truly at issue in the removal scheme. And the El Rio decision got right what the Allen decision got wrong. And I would also say that every court that has confronted the argument that the government's advancing here that I'm aware of. Let's see, who is El Rio again? So El Rio is the D.C. Court. D.C. Circuit. Circuit. Yes, Your Honor. In that case, the court made clear that L2, 233 L2 functions as a mechanism to review the dispute we have here, not the dispute that was at stake in that case, which is that threshold advanced deeming determination that the Secretary makes, which is really akin to an insurance determination. It's like an application for an insurance policy. The Secretary decides in advance of the year that the policy is sought, whether you get it or not. El Rio said Section 233 L2 is not the mechanism to resolve a dispute on that because L2 really only comes into play after, and necessarily after this, there's a policy in place. So, but if I could move back to the Allen case just to give you a few more, hopefully, details that are helpful, Your Honor. Yeah, if we go your way, then we would have to explain why we disagree with our sister circuit. Correct, Your Honor. And on that score, there's a lot of examples of the disagreement with your sister circuit. El Rio's one, and then just two, three days ago, a district court within that circuit distinguished, I'm sorry we did this at the last minute, but it just came down. I saw that, but it was just a district court decision. Correct, Your Honor. And I think, wasn't it Georgia, and that's in the 11th Circuit? Is that right? I sure hope it is. But a district court can't overturn a circuit court decision. Correct, Your Honor. But I think what it does is it shows what's wrong with it, and that the piece that the government would be relying on here was correctly identified as dicta by the Chief Judge Land in that very circuit. And then there's also the Greater Philadelphia case out of Philadelphia, where that court in a different circuit recognized the flaws in Allen. There's a decision out of Maine, the Penobscot decision. I also believe it's... You're talking about a bunch of district court decisions that go your way. Correct. Correct, Your Honor. I do not believe, other than El Rio, there is a circuit court decision that takes aim at Allen. But I believe since Allen, if I could return to the key dispositive piece in Allen that didn't exist and truly was what Allen rests on, was a deeming decision. So that's like the policy. When you apply for deemed status, you get a certificate. I think you're right on that. The deeming is done in advance. Correct. So that they don't have to buy malpractice coverage. Correct. And all the Attorney General needs to do is check with the Secretary, see if it's on the list. That's it. That's right, Your Honor. And then they could have a hearing and say, well, yeah, but the doctor was moonlighting for himself, not for the deemed entity. Right. The district court in the alternative found that it was untimely. And so therefore, that alone warrants a remand. If we think that the district court got that correct, even assuming we take jurisdiction, does that then end your appeal? No, Your Honor. Because of the first basis for jurisdiction, which I mentioned, that 1447, the exception for 1442 removals, puts the entire remand order up. So even if you believe that our 1442 removal was untimely, you still have jurisdiction to consider the rest of the order, which includes the 233-L2. And the fundamental difference, one of the fundamental differences... I'm not sure I quite understand that argument. Because as I understand, what you're saying is that because we do have jurisdiction to review the removal under 1442, that then is the jurisdictional hook to review the whole thing, including the 233-L issue. So why doesn't the untimeliness issue transcend across both statutory provisions under which you've removed the case? Because the timeliness issue as to 1442 is very different than the timeliness issue as to 230-L2. 1442 does carry a 30-day deadline out of 1446. And one key difference, and this is why the presumption that the lower courts got wrong matters so much, the presumption in favor versus against jurisdiction, why it matters so much, is that the extension of the liberally, broadly construed removal provisions is supposed to extend to not just the elements of 1442, but to the timing aspect out of 1446. So one key point is, 1446 does impose that 30-day deadline. My point is, that is to be construed liberally in this context. But that deadline does not apply to 233-L2. 233-L2 has no outer deadline. And that's for good reason. Because the analog, which it is following, the statutory analog, which it sort of embraces and follows, comes out of 2679, which is the provision for ordinary federal employees that shows Congress wants individuals who have a dispute with the government as to their immunity to be able to bring that forward any time before trial. That's the deadline, if you will. And it's an incredibly generous one. We recognize that. But that was the judgment that Congress made for good reason. Because federal immunity is so important. And it's not always crystal clear whether it's going to apply, whether there's going to be a dispute as to it. And so even if the wisdom comes late, it's okay to remove as long as the state trial has not begun. And there are a number of examples of cases removed on the eve of trial. And the courts don't like it. But they recognize it's permissible. So that's why I'm saying the timing issue doesn't extend across all of it. It only applies as to 1442. 233L2 has no timing. And I would like to say on the 1442 timing issues, there are a couple of points. On CALEFA, the government on page 21, I believe, of its answering brief, characterizes itself as a non-party. So when we, in our argument, tried to put blame on them for creating the confusion here and causing the delay, their response to that was, you can't blame a non-party for your own decisions. We have nothing to do with that. But the problem with that is that non-party status means that they can't invoke a timing issue. Because, and this is well established, only a party can file a motion on procedural grounds to remand under 1447C. The plaintiffs did not file a motion to remand. The government, claiming it's a non-party, did. But that's not a basis to invoke a timing objection. So that's what I'd say as to CALEFA. As to AFWRC, that was timely removed. There was a removal within 30 days from the date of the letter that gave Dr. AFWRC notice. And— So you wanted to save a little bit of time. Oh, I'm sorry. I thought this was going to extend only through my, the time that I stated.  I'll put two minutes on the clock— I'm sorry, Your Honor. —and then you'll come back up for remand. My apologies. May it please the Court, Martin Tataro on behalf of the United States. These cases should be dismissed based on the straightforward application of the rule that remand orders are not appealable. The Supreme Court and this Court, in case after case, has made clear that under 28 U.S.C. section 1447, a remand order generally cannot be appealed. There are exceptions, though, and the question is really whether this falls within an exception. There is, Your Honor. There's an exception under section 1442A1 for federal officers or individuals acting under federal officers, but that does not apply here for two independent reasons. First, both defendants' removal under those provisions were untimely under the 30-day requirement. Second, even if this Court were to reach the merits, the defendants simply were not officers or acting under federal officers. That second one strikes me as the interesting issue in this case. As I understand the general scheme of the statute, these entities that are private entities, they don't get a government paycheck, but they do government contracted for work for poor people and other groups that the government wants to get medical care for. And they get deemed to be federal employees just as though they did get a government paycheck. So once, and the deeming is done in advance, and as I understand it, the purpose of that is so that these entities don't have to spend money that the government will wind up getting stuck for, for malpractice insurance premiums. The deeming is done the previous year for the following year, and then they're government employees, the same thing. So why shouldn't they be treated the same way? Three responses, Your Honor. First, a textual one. The deeming determination is made for purposes of this section, that is 28 U.S.C. Section 233, not for any other purpose. Second, the Eisner entity that allegedly employed the defendants received federal grant money, and that's it. We know from cases like— I thought they were on the deeming list. They are a deemed entity, and that entitles them to federal grants. But in the 1976 Supreme Court case, and Osborne made clear, merely because you receive federal grants, that's not enough. Well, no, of course not. But if you're deemed to be just like a federal agency or employee, that is enough. Again, Your Honor, textually, you're deemed under, for purposes of this section, for this narrow section, Section 233, which is talking about removal. It's not talking about for any other purpose. And if Congress had intended to create this gaping loophole that would allow all sorts of cases to be removed pursuant to the federal officer removal provision, one would have expected Congress to say so expressly. Didn't they say so in 233? No, Your Honor. It said for purposes of this section. And I don't want to—I want to make clear that we are talking about— Purpose of this section is to provide the exclusive remedy just as though they did get a government paycheck. It's for purposes of this section to describe when a particular entity can be deemed an entity for that initial determination and when, for a specific allegation and a specific complaint, it can be removed to federal court. What text do you rely on for that distinction? Which distinction, Your Honor? You're saying they're deemed for one purpose but not another and not deemed to be federal employees for removal, but they are deemed to be— well, I can't tell exactly what you think the deeming is for. Yes, Your Honor. To clarify, to take a step back to explain this statutory and regulatory regime, the statute expressly says you're deemed to be an employee under the Public Health Service for purposes of this section. It doesn't say for any other section. And that means something. That means the deemed entity is able to, for example, have access to a federal program that provides with lower prescription drug prices, and it allows you to charge more for services under Medicare. But that deeming determination is temporally, as Judge Kleinfeld noted, at the beginning of the period. What we're talking about here— The deeming comes before the period, and it looks like in the statute what you're deemed for is this exclusiveness of remedy under subsection A. To be clear, you're deemed for an exclusive remedy. It's not just that initial determination. There's a separate determination, a coverage determination. And so that's why, for example, section 233 is talking about while acting within the scope of— Well, sure, that could matter because you could work part-time for the deemed entity that provides medical services for poor people. And then the doctor could also be making some more money on the side by doing private cases. You could have a private practice outside the deemed entity. But even under defendant's reading, I think even in that outside scenario, that person would be able to remove. So if I could just focus again on the text. It focuses on deeming for purposes of this section, which gets you certain government benefits. But when we're talking about— What government benefit is there under that section except the exclusiveness of remedy? Once you are deemed an entity, you are able to have these ancillary benefits. But when we're talking— What ancillary benefits? I don't see any except exclusiveness. I mean, anybody who gets a federal grant to do anything, an artist to do a sculpture, can get the federal contract. But they don't get the exclusiveness of remedy that's provided for deemed entity. I can't see what benefits you're talking about. The exclusiveness of remedy, to be clear, only applies when you're acting within the scope of your employment for the actions or omissions that are the basis of the lawsuit. Yeah, that's the moonlighting case. You keep saying that there are other benefits you get if the entity you work for is deemed. And I keep asking, what benefits? And I don't understand your answer yet. There are regulatory benefits that come along with it. It's cited, I think, in the supplemental excerpts of record when we reference— What benefits? Why don't you tell me right now? Sure, the two benefits I noted before. You have access to higher billing rates under Medicare and you're able to access a federal program that provides you with access to lower-priced prescription drug benefits. And I want to make clear, we're not talking about a few doctors here and there. Under the defendant's view of the case, we're talking about potentially hundreds of thousands of deemed employees who would have access to Section 1442. And if that sort of sea change were expected, we would expect Congress to say so expressly. And I'd also refer this court— The question is whether they did, in fact, say it. Right, and when it said, you're deemed an entity for this limited purpose under this section, it didn't say you're a deemed individual or you're deemed government entity for others. I understand what you're saying, though. I'm still having trouble reconciling it with Subsection A. Tell me, in Subsection L1, where it says that the Attorney General shall make an appearance in such court and advise such court on whether the Secretary has made the deeming determination, why is it enough if the Attorney General makes an appearance but does not advise such court? Why shouldn't the end be read as also following within the 15 days? So I think that's a merits issue, aside from an appellate jurisdiction issue, and I'm happy to get to it. I think critical here is the entire text— Why don't you get to it now? Sure, absolutely. Under Section 233 L1, it's not just that initial deeming determination, it's also the coverage determination. So for that, it looks as though that could be determined in the Federal District Court by the required hearing. That's how you could find out whether the doctor had been moonlighting or working for the deemed entity. That is incorrect, Your Honor. Under Section 233 C, and this is a critical point because it stands in stark contrast to the Westfall Act, Section 2679 D3, a positive determination is subject to a hearing in District Court. And the District Court then decides whether the positive deeming determination was correct or not. However, there is no analogous provision in Section 233 or anywhere else that would provide a negative deeming determination getting into Federal Court. And if I could just refer back, Your Honor, to Section 233 L1, it's to refer to the advice, appear in advice. It's talking about as to whether the secretary has determined under subsection G and H that you're a deemed employee. But it also says, for purposes of this section, with respect to the actions or omissions that are the subject of the civil action or proceeding. And that determination simply cannot be made when the entity is initially deemed an employee at the beginning of the year. So there are two separate determinations. There's the initial deeming determination, but there's also the coverage determination. And that's why- You mean the scope? The scope. So it's talking about, yeah, with respect to the actions or omissions that are the subject of the civil action or proceeding. And so under defendant's view of the statute, that line is simply read out of the statute and that cannot be correct. And I'd also refer the court to Subsection 233 L- Which line is read out? The line in Subsection C that you're talking about? No. Two particular points. Subsection 233 C, it's talking about- Okay, that doesn't even come up with one of these deemed entities. So which line is read out of the statute? Under Section 233 C, the statute is only referring to a district court hearing when there's a positive deeming determination by the Attorney General. I hear you on that. Okay, and then the second point is on 233 L- But it doesn't say that there can't be a hearing on the deeming. It just says there shall be a hearing on what C addresses. And then on Section 233 L-1, we're talking about with respect to the actions or omissions that are subject to the civil action or proceeding. And under defendant's view, that line is simply read out of the statute. Okay, that's where I ask you which line is read out. I'm not finding the words that you think are- Sure, it's the provision that start, I think it's about, I'm not sure which version you have, but maybe six lines down. With respect to the actions or omissions that are the subject of the civil action or proceeding, that's contemplating not the initial determination because it simply couldn't have happened because the allegations in the complaint didn't happen yet. That's talking about with respect to the particular allegations in the complaint. And to the extent there were any doubt about that, L-1 and L-2, as I think defendants agree, must be read together. I'm missing something. It looks to me like with respect to the actions or omissions that are the subject of such civil action, that just would mean with respect to this particular medical malpractice case. It'd be with respect to whether you're acting within the scope of your employment, which is something that cannot be determined when there's an initial deeming determination. And so, for example, then if you read down and look at Section 233 L-2, it's describing how onerous this advice requirement is. And it says, if the Attorney General fails to appear in 15 days, the defendant is allowed to remove. It's not saying fails to appear and does anything else. The only requirement of Section 233 L-1 is that the Attorney General has to, and this is right from the statute, advise such court as to whether the Secretary has made a determination. I can't make sense of the 15-day deadline for the Attorney General unless it simply means checking with the Department of Health and Social Services on whether the entity is in the deemed list. That's the only thing you could possibly do that fast. And I can't see the point of making the deadline 15 days as Congress did, unless what it means to do is enable the doctor to avoid a default judgment because he'll know in plenty of time to file an answer within 30 days. Your Honor is correct that the purpose of the 15-day requirement is to prevent default judgments. And that is served when the Attorney General appears and advises the state court as to whether a determination has been made. Yeah, but it doesn't do the job if he appears but does not advise the state court of whether the entity is deemed. If he just shows up but he doesn't advise whether the entity is deemed, then the doctor is still hanging out there. The Attorney General is sticking his nose in, but he's not saying whether the doctor is treated as a federal employee or not. So the doctor still has to hire private counsel as Mel Insurer does if he has medical malpractice insurance. He still has to be represented and file an answer. Both of these doctors did have medical malpractice insurance. That's in the record, but more to the point, it's very unlikely- The federal grant has to pay for it. It's, no, I believe the particular, again, this was pursuant to an independent contracting relationship where- Of course, but if doctors can't count on being deemed, and treated as federal employees, then their Poor People's Health Services outfit has to buy medical malpractice insurance, a major overhead item, and the grant has to cover it. Your Honor, there's a critical point here. This scheme that Eisner has developed, the HHS informed Eisner that this sort of scheme, this is as far back as March 2014, would not be covered because you're not allowed to enter into this continuous staffing arrangement with a non-deemed entity, farm out your doctors for profit 24-7, and then expect to have the government be foot the bill for medical malpractice. I don't remember reading that. Where is it? I believe that's referenced in the denial letters at supplemental excerpt of record 12 for Khalifa and four for Affleworth. Thanks. But just to follow up for a moment on Judge Kleinfeld's question, what's the purpose of the Attorney General merely notifying the state court that the defendant's claim for FTCA coverage is under consideration? Your Honor, realistically, I think it's quite unlikely that a state court would then enter a default judgment when it knows that the United States is considering the particular scope of coverage here. And in these cases, for example, shortly thereafter, the government then notified the state courts in both cases that this sort of independent contracting scheme and for the particular allegations of this complaint fell outside the scope of coverage. So it's that particular purpose. I see a run over... Realistically, I think most state judges and state courts, in my experience, really don't have that kind of deference for the federal government. You're telling me what to think about realistically as opposed to what the rules are. I can also only speak to what practically occurred in these cases. And so that after the HHS and the Attorney General informed the district court, there's a determination as quickly as possible. Now, that was slowed down in this case because we asked the defendants in Eisner for more information, they didn't provide it. Let me ask you something about that contracting relationship. Ordinarily, a doctor will work as an employee of a medical group and the doctor will have privileges or the medical group will have an arrangement with the hospital so that all its doctors have privileges at the hospital and the doctors perform hospital-type procedures at the hospital. Is there something different here? So the purpose of this program is, as Your Honor noted, is to provide underserved populations with care. And so that sort of care is supposed to be primary care and that's simply not what... The doctors, the OBGYN clinics for poor women, they can't deliver babies? I'm not saying that at all, Your Honor. That's done at hospitals. For example, in this particular case, and this is at the Califa excerpts of Record 126 to 127, HHS revoked California Hospital's status as a service site precisely because of this independent contracting relationship that went well beyond what the regulations envisioned. This doctor wasn't employed by California Hospital, he was employed by the OBGYN group. He was, Your Honor, but they were both providing services at California Hospital. That's where the alleged malpractice occurred. Do you want to go ahead and wrap it up? Our questioning is taking you well over time. Yes, Your Honor. If I could very quickly just mention immunity from suit, the sites the defendants all contemplate, those are all immunity from suit where there's already federal jurisdiction in district court. The 28-J letter that the defendants filed, that case and other district court cases they cite, they're fundamentally different because those aren't cases where the attorney general appeared within 15 days. And so, for example, the district court from Georgia case is totally different, not on point, and to your point, why it could be decided in the 11th Circuit with Allen is finding precedent. I'm happy to answer any other questions the panel has, but if not, we ask that the judgments be affirmed. Thank you, counsel. First point, I think three points. Number one, Eisner asked for permission to do, this is about the merits, so I don't think it's entirely proper, but I want to respond to the part about the merits. Number one, Eisner asked for permission to engage in this, what was referred to as a 24-7 call panel. They laid it out in painful detail and then they attached the contract with the hospital to carry out the function. They gave it to the government and they asked for permission to do it in painful detail. The government said, yes, you may do it. Then a couple of claims, almost identical to the claims that are issued here, were brought and the government covered them. And then in 2015, years into this arrangement, the government sent a letter to Eisner saying, we're dropping this arrangement. We approved it in the past, but we're now changing it. And then that letter said, that's going to be effective 60 days from now. All the events in this case precede that letter. That's what I'll say to the merits, but that is for the merits. Number two, the government is conflating three different decisions. There's the advanced decision by the secretary that only the secretary can make. The AG's consultation piece of that determination was stripped out of the statute in 1995 for good reason. The meaning of the sentence that the government says has been written out of the statute has easy to understand meaning and you can tie it right to the notice of deeming that the government itself issues. In those notices, and there are multiple in the record, they say this deem status is much like an occurrence-based insurance policy. So what has to happen for an occurrence-based insurance policy when a claim arises? You have to do two things. There's two variables at issue. Number one, do you have a policy? Number two, do you have a policy at the time of the events giving rise to the claim? So just being deemed in the present isn't good enough. You've got to determine whether you're deemed in the moment that the events that give rise to the claim occurred. And so to one of Your Honor's questions earlier, that is easy to do and can be done in 15 days. Why? Because all you have to do is look at two things. What are the date of the events in the claim? And was there a deem status for those dates? That triggers removal so a dispute can be had in federal court. All right. Thank you, counsel. Thank you, Your Honor. These matters are submitted for decision.
judges: Kleinfeld, Nguyen, Pauley